IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| EMPIRE INDUSTRIES, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 18 C 698 |
| | ) | |
| WINSLYN INDUSTRIES, LLC, | ) | |
| THE FIRECLAY FACTORY LLC, | ) | |
| NIKO (INT) LTD., and | ) | |
| IMPERIAL PACIFIC TRADING, LLC, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

Empire Industries, Inc. has sued Winslyn Industries, LLC, The Fireclay Factory LLC, Niko (INT) Ltd., and Imperial Pacific Trading, LLC. Originally Empire sued just Winslyn, alleging that it had tortiously interfered in a contract between Empire on the one hand and Fireclay and Niko on the other. The Court granted a preliminary injunction against Winslyn. Winslyn later added Fireclay, Niko and Imperial as defendants. Niko and Imperial have moved to dismiss.

## Facts

The case concerns fireclay sinks, which are formed from clay fired at very high temperatures. Empire's original claims arose from its allegation that Fireclay, a sink manufacturer, promised it would manufacture certain sink designs exclusively for Empire but then produced sinks with an indistinguishable design for Winslyn, which like Empire distributes sinks.

Empire is based in New Jersey.  It alleges that in July 2016, it entered into an agreement with Fireclay, which is based in the United Arab Emirates.  Under the agreement, Empire agreed to provide Fireclay with certain designs, and Fireclay agreed to treat them as confidential and produce sinks based on the designs exclusively for Empire.  In 2017, however, Fireclay began to market the designs to other customers and prospective customers, including Winslyn, which is located in Illinois.  Winslyn ordered certain sinks that were based on Empire's proprietary designs.  Fireclay advised that the sinks were not available because they belonged to another customer and that "design rights" precluded Fireclay from selling them to Winslyn; Fireclay later advised Winslyn that it had agreed to sell the sinks only to the other customer (Empire). After pressure from Winslyn—which had secured a significant order from Menard's, a major retailer—Fireclay agreed to make a minor, inconsequential alteration to one panel of the sink, and it made the "redesigned" sinks for Winslyn.  In doing so, Fireclay used the mold forms that it had already set up for Empire, swapping out one piece from the forms.

In the meantime, Fireclay delivered sinks to Empire at a less-than-expected pace.  Empire eventually discovered that Fireclay was selling nearly identical sinks to another customer and began to suspect that this had something to do with Fireclay's slow production of sinks for Empire.  When confronted, Fireclay initially denied that it was shipping any sinks using Empire's mold to North America and reaffirmed its exclusivity agreement.  Later, however, Fireclay terminated its relationship with Empire. This lawsuit followed.

Empire alleges that Winslyn, despite being aware of Fireclay's exclusivity

agreement with Empire, marketed the same sinks to Imperial (which is based near Atlanta, Georgia) starting in the summer of 2017. According to Empire's third amended complaint, Winslyn sent "one or more" sinks to Imperial, which later returned the sink(s) to Winslyn's Illinois warehouse. Imperial then allegedly began talking directly to Fireclay. Concerned that its pricing would be undercut, Winslyn sought and entered into an agreement with Fireclay by which Fireclay agreed not to ship directly to Imperial and Winslyn would become the sole supplier of the sinks to Imperial.

As indicated earlier, the Court entered a preliminary injunction against Winslyn in June 2018. *See Empire Indus. Inc. v. Winslyn Indus., LLC*, 327 F. Supp. 3d 1101 (N.D. Ill. 2018). The injunction barred Winslyn "and anyone affiliated or acting in concert with it . . . from purchasing, marketing, or selling sinks obtained from The Fireclay Factory, LLC based on plaintiff Empire Industries, LLC's Olde London and Sutton Place designs." *Id.* at 1118. In early July 2018, the Court modified the injunction to apply to "sinks obtained from The Fireclay Factory, LLC with a design that is identical to or visually indistinguishable from plaintiff Empire Industries, LLC's Olde London and Sutton Place designs." *See* Order of July 6, 2018 (dkt. no. 105).

Empire alleges that at the time of the injunction, several shipping containers of sinks to which the injunction applied were en route to Winslyn's Illinois warehouse. According to Empire, Fireclay redirected some of these containers to Imperial or sent additional containers of the same sinks to Imperial directly. Empire alleges that this is the result of an arrangement between Winslyn and Fireclay. According to Empire, Winslyn and Fireclay "have engaged in extensive negotiations and planning in an effort to continue to market and sell modified versions of Empire's sinks in the United States

3

notwithstanding the Court's June 21, 2018 order in an effort to build on and preserve relationships previously and unjustly built on Empire's original sinks." 3rd Am. Compl. ¶ 55. This includes, Empire alleges, the redirection of sinks intended for Winslyn to Imperial, Winslyn's customer.

As for Niko, which is located in the United Kingdom, Empire alleges that it is "affiliated" with Fireclay. *Id.* ¶ 14. Empire's complaint uses all references to "Fireclay" to include Niko. *Id.* The Court notes that in its preliminary injunction ruling, it found that Tony Wood, who is alleged to be employed by Niko, was involved in making Fireclay's exclusivity agreement with Empire and in telling Winslyn that Fireclay had agreed with another customer (Empire) to sell the design only to that customer as well as in the "redesign" to purportedly avoid the agreement with Empire. *See Empire Indus.*, 327 F. Supp. 3d at 1006-07, 1111, 1115.

In Empire's third amended complaint, it asserts seven claims. Certain of the claims identify "Fireclay" as the defendant or a defendant, but based on the way Empire uses this term in the complaint, these claims appear to be asserted against Niko as well. Count 1 is a claim against Winslyn and Imperial for tortious interference with contract, specifically, Fireclay's exclusivity agreement with Empire. This claim is based on alleged inducement of Fireclay to produce sinks for Winslyn and Imperial. Count 2 is a claim of unjust enrichment against Winslyn and Imperial based on the same conduct as count 1. Count 3 is a claim seeking injunctive relief; it is not really a separate claim because it does not set forth a separate basis for relief. Count 4 is a claim against Fireclay and Niko for breach of contract. Count 5 is a claim against Fireclay and Niko for fraud, based on allegedly false statements by Peter Shilling, a representative of

Fireclay, that it was not selling sinks based on Empire's design in North America. Count 6 is a claim against Fireclay and Niko for conversion. In this claim, Empire alleges that the sinks produced using its design are its property and that defendants converted them by shipping them to Winslyn. Count 7 is a claim against all defendants for civil conspiracy. Empire alleges that Fireclay, Niko, and Imperial have schemed to interfere with and breach Empire's contractual rights; unjustly obtain benefits from Empire's designs; carry out Fireclay's fraudulent scheme to use Empire's designs for its own benefit; and "attempt to evade the effect of the Court's June 21, 2018 order and dispose of inventory subject to that order." 3rd Am. Compl. ¶ 95.

Imperial and Niko have moved to dismiss Empire's claims against them. Imperial argues that personal jurisdiction is lacking. Niko also argues the absence of personal jurisdiction and contends, in the alternative, that under a purported agreement with Empire, the parties agreed to litigate any disputes in the courts of England.

## Discussion

Motions to dismiss for lack of personal jurisdiction are governed by Federal Rule of Civil Procedure 12(b)(2). Where a defendant moves to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of establishing that jurisdiction exists. *Advanced Tactical Ordnance Sys., LLC v. Real Action Paintball, Inc.*, 751 F.3d 796, 799 (7th Cir. 2014). The plaintiff need only make out a prima facie case of personal jurisdiction. *Purdue Research Found. v. Sanofi-Synthelabo, S.A.*, 338 F.3d 773, 782 (7th Cir. 2003). If the defendant submits affidavits or other evidence in opposition to the exercise of jurisdiction, the plaintiff must go beyond the pleadings and submit affirmative evidence to support personal jurisdiction. *Id*. The Court accepts as true all

5

uncontroverted allegations in the complaint and resolves any factual disputes in favor of the plaintiff. *Felland v. Clifton*, 682 F.3d 665, 672 (7th Cir. 2012).

A federal court hearing a case pursuant to diversity jurisdiction (as in this case) has jurisdiction over a defendant if a state court in the forum state would have jurisdiction over the defendant. *See, e.g., Philos Techs., Inc. v. Philos & D, Inc.*, 802 F.3d 905, 912 (7th Cir. 2015). Illinois's long-arm statute permits the exercise of personal jurisdiction if it would be permitted under either the Illinois Constitution or the United States Constitution. *See* 735 ILCS 5/2-209(c). The Seventh Circuit has held that usually "there is no operative difference between Illinois constitutional and federal constitutional limits on personal jurisdiction." *Philos Techs.*, 802 F.3d at 912 (internal quotation marks omitted). The Court therefore analyzes personal jurisdiction under Illinois law using the framework provided by federal due process requirements. *See id*.

Due process permits a court to exercise personal jurisdiction over an out-of-state defendant if it has "minimum contacts with [the forum state] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. State of Wash., Office of Unemployment Comp. & Placement*, 326 U.S. 310, 316 (1945) (internal quotation marks omitted). The contacts with the forum state must be purposely established by the defendant, "such that he should reasonably anticipate being haled into court there." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474–75 (1985) (internal quotation marks omitted). And the contacts must be with the forum state itself, not simply with persons or entities that reside there. *Walden v. Fiore*, 571 U.S. 277, 285 (2014).

There are two types of personal jurisdiction, general and specific. In this case,

6

Empire relies on specific jurisdiction, which requires that the lawsuit "result[ ] from alleged injuries that 'arise out of or relate to" the defendant's contacts with the forum. *Burger King*, 471 U.S. at 472-73 (internal quotation marks omitted).

Empire has not offered a sufficient basis for the Court to exercise jurisdiction over Niko on the claims for breach of contract, fraud, or conversion. First of all, the only statement cited in support of the fraud claim is one made by a representative of Fireclay, not Niko. That aside, Empire contends that Niko and Fireclay worked in concert with each other to establish a relationship with Winslyn, an Illinois-based company. But as the Seventh Circuit stated in *Philos Technologies*, an out-of-state party's formation of a contract with an in-state party generally is not enough by itself to support jurisdiction. *Philos Techs.*, 802 F.3d at 913. In this situation, other contacts, "such as 'prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing'" may show the required purposeful availment. *Id.* (quoting *Burger King*, 471 U.S. at 479). Illinois courts take into account "(1) who initiated the transaction; (2) where the contract was negotiated; (3) where the contract was formed; and (4) where performance of the contract was to take place." *Philos Techs.*, 802 F.3d at 813 (quoting *Estate of Isringhausen ex rel. Isringhausen v. Prime Contractors & Assocs., Inc.*, 378 Ill. App. 3d 1059, 1066, 883 N.E.2d 594, 600–01 (2008)).

The evidence regarding who initiated the transaction with Winslyn is less than crystal clear, but it appears that Winslyn reached out to Fireclay and pushed it to sell Winslyn the sinks in question—not the other way around. The terms of the relationship between Winslyn and Fireclay cannot be said to have been negotiated in Illinois any

7

more than they were negotiated in the UAE.  And performance largely was to take place wherever the sinks were to be manufactured and shipped.  The sinks weren't made in Illinois, and even though Winslyn is located here, Empire cites no evidence that Fireclay was shipping sinks to this state.

Empire also seeks to rely on Fireclay's contacts, arguing that an agent's contacts are attributed to its principal for jurisdictional purposes.  That may be true, but Empire cites no evidence indicating that Fireclay acted as Niko's agent.  If anything, the evidence shows that the agency relationship ran the other way.  Empire cites no case indicating that a principal's jurisdictional contacts are attributed to its agent.

As part of its conspiracy claim, Empire alleges that the defendants worked in concert to violate and evade the Court's preliminary injunction after it was entered.  The defendants concede that the law permits the exercise of personal jurisdiction over a non-resident defendant for aiding and abetting a violation of an injunction.  Specifically,

> [n]onparties who reside outside the territorial jurisdiction of a district court may be subject to that court's jurisdiction if, with actual notice of the court's order, they actively aid and abet a party in violating that order.  This is so despite the absence of other contacts with the forum.  Jurisdiction over persons who knowingly violate a court's injunctive order, even those without any other contact with the forum, is necessary to the proper enforcement and supervision of a court's injunctive authority and offends no precept of due process.

*SEC v. Homa*, 514 F.3d 661, 674-75 (7th Cir. 2008) (internal quotation marks and citation omitted).  But Empire cites no evidence, and its complaint contains no factual allegations, that Niko had any involvement in the alleged effort to divert the sinks in question to Imperial.  Thus the claimed effort to violate the injunction order does not

provide the Court with jurisdiction over Niko.[1]

Turning to Imperial, and starting with the question of the alleged violation of the Court's injunction, Empire has sufficiently alleged Imperial's knowledge of the preliminary injunction and its active aiding and abetting of an effort by Winslyn, the enjoined party, to violate it by causing sinks from Fireclay (using Empire's design) that were intended for Winslyn to be shipped to Imperial. This is sufficient under *Homa* to support jurisdiction over Imperial for a request for a finding of contempt. Imperial says that Empire has made no such request, but its conspiracy claim includes an allegation that Imperial knowingly aided and abetted Winslyn in violating the injunction, and that is sufficient to tee up a request for a contempt finding.

But that is it. Empire cites no authority suggesting that if a court has jurisdiction over a non-resident defendant for aiding a violation of an injunction, the plaintiff in the underlying case is entitled to assert additional claims against the defendant without showing an independent basis for jurisdiction relating to those claims. And here Empire has offered no evidence showing that Imperial purposely established contacts with Illinois (not simply with an Illinois resident like Winslyn) sufficient to support the Court's exercise of jurisdiction over Imperial on Empire's other claims. For this reason, Empire cannot proceed against Imperial in this case on anything other than a request for a contempt finding.

## Conclusion

For the reasons stated above, the Court grants defendant Niko (INT) Ltd.'s

---

[1] Empire has not provided a basis sufficient to support its alternative, and belated, request to take "jurisdictional" discovery from Niko or Imperial prior to a ruling on their motions to dismiss.

motion to dismiss [146] and grants in part defendant Imperial Pacific Trading, LLC's motion to dismiss [158]. All of plaintiff's claims against Niko are dismissed for lack of personal jurisdiction, and all of plaintiff's claims against Imperial except for its request for a contempt finding are likewise dismissed for lack of personal jurisdiction.

Date: January 28, 2019

_____
MATTHEW F. KENNELLY
United States District Judge