IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| EMPIRE INDUSTRIES INC., | ) |
| Plaintiff, | ) |
| vs. | ) Case No. 18 C 698 |
| WINSLYN INDUSTRIES, LLC, NIKO (INT) LTD., THE FIRECLAY FACTORY LLC, and IMPERIAL PACIFIC TRADING, LLC, | ) |
| Defendants. | ) |

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

Empire Industries Inc. alleges that three of the parties it sued in this case—Winslyn Industries, LLC, The Fireclay Factory LLC, and Imperial Pacific Trading, LLC—have violated the preliminary injunction the Court entered against Winslyn in June 2018. Empire has also moved to modify the preliminary injunction and to compel Winslyn to respond to certain discovery requests.

### Background

The Court assumes familiarity with its prior written rulings in this case. *See Empire Indus. Inc. v. Winslyn Indus., LLC* (*Preliminary Injunction Ruling*), 327 F. Supp. 3d 1101 (N.D. Ill. 2018); *Empire Indus. Inc. v. Winslyn Indus., LLC* (*Ruling on Motions to Dismiss*), No. 18 C 698, 2019 WL 339544 (N.D. Ill. Jan. 28, 2019). What follows is a brief synopsis of the procedural history.

## A. Commencement of the case and preliminary injunction

Empire is a New Jersey company that manufactures and distributes bathroom and kitchen products. In January 2018, it filed this suit against Winslyn, another seller of kitchen products based in Illinois. Empire alleges that Winslyn tortiously interfered with Empire's contract with a third company, The Fireclay Factory LLC.

Fireclay, which is based in the United Arab Emirates, manufactures "fireclay-style" sinks, which are formed from clay fired at very high temperatures. Empire contends that in 2016 it designed new models of fireclay sinks and that Fireclay agreed to manufacture these sinks exclusively for Empire. Empire alleges that in early 2017, Winslyn unlawfully interfered with that agreement by seeking to distribute and sell the sinks Fireclay agreed to manufacture exclusively for Empire.

In April 2018, Empire moved for a preliminary injunction to bar Winslyn from interfering with the exclusivity agreement. After an evidentiary hearing, the Court granted the motion and issued the following injunction:

> [T]he Court enjoins Winslyn Industries, LLC and anyone affiliated or acting in concert with it, pending the trial or other disposition of this case, from purchasing, marketing, or selling sinks obtained from The Fireclay Factory, LLC based on plaintiff Empire Industries, LLC's Olde London and Sutton Place designs, including Winslyn's BTL041, 43, 50, and 52 models.

*Preliminary Injunction Ruling*, 327 F. Supp. 3d at 1118. Winslyn then moved to clarify the injunction order, arguing that the phrase "based on" was insufficiently precise. In July 2018, the Court granted that motion in part and modified the injunction to encompass only the purchase, marketing, or sale of sinks "identical to or visually indistinguishable from" Empire's sinks. Dkt. no. 105.

## B. Amended complaints and motions to dismiss

In its initial complaint, Empire named only Winslyn as a defendant. On May 15,

2018—after it filed the preliminary injunction motion was filed but before the Court entered the injunction—Empire amended its complaint to join as defendants Fireclay and an associated entity, Niko (INT) Ltd. It alleged that both entities caused a breach of Empire's contract with Fireclay and participated in a civil conspiracy.[1]

In October, Empire again amended its complaint to add as a defendant Imperial Pacific Trading, LLC, a company based in Atlanta that sells sinks, faucets, and drains. Empire alleged that Imperial Pacific participated in the conspiracy by purchasing Empire's sinks from either Winslyn or Fireclay.

Niko and Imperial Pacific each moved to dismiss the complaint for lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2). In its response brief, Empire argued that the Court has specific jurisdiction over both defendants based on their alleged contacts with Illinois. Empire also contended that the Court could exercise jurisdiction over Imperial Pacific because it conspired with the other defendants to violate the preliminary injunction by purchasing sinks from Fireclay that Winslyn originally intended to buy.

The Court granted the motions to dismiss in part. It rejected Empire's arguments for personal jurisdiction, reasoning that Empire had not alleged that either Niko or Imperial Pacific had sufficient contacts with Illinois to permit Empire to assert direct claims against them here. But the Court noted that it could exercise jurisdiction over Imperial Pacific for the limited purpose of determining whether it should be held in contempt for allegedly acting in concert with Winslyn to violate the preliminary

---

[1] The Court issued a letter rogatory issued to the judicial authority of the United Arab Emirates on May 24, 2019 to effectuate service of summons, but Fireclay contends that it has not yet been served with the summons and complaint.

3

injunction. See Ruling on Motions to Dismiss, 2019 WL 339544, at *4 (citing SEC v. Homa, 514 F.3d 661, 674–75 (7th Cir. 2008)).

**C.     The present motions**

In February 2019, Empire moved for an order to show cause why Imperial Pacific should not be held in contempt based on its alleged efforts to assist Winslyn's violation of the preliminary injunction. In that same motion, Empire also requested expedited discovery in anticipation of an evidentiary hearing on the alleged violation.

Less than two weeks later, Empire filed another motion regarding the preliminary injunction, this one directed at Fireclay. Empire alleges that it owns the molds that Fireclay had used to physically produce Empire's sinks and that Fireclay continues to use those molds to manufacture different models of sinks that it then sells to Winslyn. On this basis, Empire seeks to modify the scope of the preliminary injunction to encompass not only the designs that Empire developed but also the use of its molds. In addition, Empire argues that the Court should hold Fireclay in contempt of the existing preliminary injunction for the same conduct described in Empire's motion against Imperial Pacific.

In March 2019, Empire moved to compel Winslyn to produce additional documents and provide updated interrogatory answers. In its motion, Empire alleges that Winslyn had participated in the conspiracy to sell Empire's sinks to Imperial Pacific. Empire seeks discovery that it contends will prove the existence of this conspiracy.

In June 2019, Empire moved for an order to show cause why Winslyn should not be held in contempt. It alleges that Winslyn had engaged in the same conspiratorial conduct described in the motions against Imperial Pacific and Fireclay, and it points to

4

new evidence that it says establishes the existence of an agreement among the defendants to violate the preliminary injunction. Empire also argues that this new evidence shows that Winslyn withheld evidence during discovery relevant to Empire's motion to compel.

## Discussion

The Court will first consider Empire's contempt motions against Winslyn, Fireclay, and Imperial Pacific, followed by the motion to compel and the motion to modify the preliminary injunction.

**A.     Contempt motions**

"[C]ivil contempt may be imposed if proven by clear and convincing evidence." *Lightspeed Media Corp. v. Smith*, 830 F.3d 500, 508 (7th Cir. 2016). In general, "civil contempt should not be resorted to where there is [a] fair ground of doubt as to the wrongfulness of the defendant's conduct." *Taggart v. Lorenzen*, 139 S. Ct. 1795, 1801 (2019) (alteration in original) (internal quotation marks omitted).

Empire alleges that Winslyn, Fireclay, and Imperial Pacific conspired to violate the preliminary injunction by arranging to have Imperial Pacific buy the sinks that Winslyn was prohibited from purchasing. The parties agree that the injunction directly binds Winslyn and not Fireclay or Imperial Pacific, and thus that Fireclay and Imperial Pacific may be liable for contempt only if they acted in concert with Winslyn to violate the injunction. *See* Fed. R. Civ. P. 65(d)(2); *see also Nat'l Spiritual Assembly of the Baha'is of the U.S. under Hereditary Guardianship, Inc. v. Nat'l Spiritual Assembly of the Baha'is of the U.S., Inc.*, 628 F.3d 837, 848 (7th Cir. 2010) (a non-party acts in concert for the purposes of contempt if it "aids or abets an enjoined party in violating an

injunction"). The Court will consider first whether Empire has shown by clear and convincing evidence that Winslyn violated the injunction and then will discuss the contempt motions against Fireclay and Imperial Pacific.

1. **Winslyn**

In its motion for an order to show cause why Winslyn should not be held in contempt, Empire points to three documents that it contends evince an agreement between Winslyn, Fireclay, and Imperial Pacific to circumvent the preliminary injunction. First, Empire cites an invoice, dated August 14, 2018 and obtained from Werner Global Logistics US, LLC, regarding a shipment of stone sinks. The invoice identifies Fireclay as the shipper, Imperial Pacific as the consignee, and Winslyn as the party to be billed. Second, Empire cites an e-mail chain from July 2018 in which an employee of Niko, the entity affiliated with Fireclay, wrote to Werner Global Logistics that Winslyn would bear any additional costs incurred in reconsigning the shipment to Imperial Pacific. Empire argues that these two documents are proof of an agreement between the three parties to have Imperial Pacific, instead of Winslyn, buy Empire's sinks from Fireclay after the preliminary injunction issued.

Third, Empire cites a February 15, 2019 e-mail from a Niko employee to a representative of Mr. Direct, a brand associated with the American plumbing distributor Elkay. The subject of the e-mail is "Fireclay sink," and the body of the message contains only a hyperlink to one of Empire's sinks on the website of a popular online retailer of home goods. Empire alleges that Elkay's representative informed Empire of the provenance of this e-mail: Fireclay had failed to deliver a sink to Mr. Direct in time for a trade show and sent the link to Empire's product so that Mr. Direct could order the

6

sink as a replacement. Empire argues that this e-mail—and Mr. Direct's purported explanation for it—proves that Fireclay has continued to sell Empire's sinks to other companies.

Winslyn contends that it had no role in Fireclay's agreement to sell Empire's sinks to Imperial Pacific. It alleges that it simply refused to receive a shipment of Empire's sinks, as the preliminary injunction required, and that Fireclay independently negotiated the sale of those same sinks to Imperial Pacific. In support of this claim, Winslyn submitted a declaration from its president, William Stuebner. Stuebner attests that Imperial Pacific is Winslyn's competitor and that Winslyn never reached any agreements with Fireclay or Imperial Pacific with respect to the disposition of the sinks it refused to accept.

The evidence regarding the redirected shipment of sinks is insufficient to permit a finding that Winslyn violated the preliminary injunction. First, although the documents Empire cites show that Fireclay sold Empire's sinks to Imperial Pacific, they do not suggest that Winslyn was involved in that transaction. It is undisputed that Fireclay originally sent Winslyn the merchandise that was later re-routed to Imperial Pacific, and Empire's evidence is equally consistent with Winslyn's explanation of how that occurred—namely, that it simply refused to accept the shipment and released the merchandise to be sent elsewhere. The fact that Winslyn paid the additional costs associated with reconsignment is arguably consistent with Empire's theory that Winslyn helped orchestrate the sale to Imperial Pacific. But this evidence too is plausibly consistent with Winslyn's account: it may have paid those costs as a goodwill gesture, for example, or because it was contractually obligated to do so. These documents do

7

not amount to clear and convincing evidence that Winslyn violated the preliminary injunction.

Second, the e-mail from Niko to Mr. Direct including a link to Empire's product does not constitute evidence that Winslyn, Fireclay, or Imperial Pacific violated the preliminary injunction. Even if Empire's claims about the origin of this e-mail are credited—and Empire has not provided any evidence, such as an affidavit from the e-mail's recipient, to corroborate its account—it shows at most that Fireclay was selling Empire's sinks to Mr. Direct. The preliminary injunction does not prohibit Fireclay from doing so because it applies only to Winslyn and entities acting in concert with Winslyn. Without evidence that Winslyn acted in concert with Fireclay's alleged sales to Mr. Direct, Empire cannot meet its burden to prove by clear and convincing evidence that civil contempt should be imposed upon Fireclay.

Empire argues that the Court should infer that Winslyn was involved in all of these transactions because Fireclay and Winslyn had previously agreed that Winslyn would act as Fireclay's exclusive distributor for all sales to Imperial Pacific. But Fireclay and Winslyn deny the existence of an exclusivity agreement, and Empire's evidence for this claim consists of only two e-mails containing statements whose accuracy and reliability is disputed. In the first e-mail, sent in October 2017, Winslyn's president Stuebner apparently indicated that in the future "any subsequent orders" that IPT made from Fireclay would go through Winslyn. In response, Winslyn argues that this arrangement never came to pass, citing Stuebner's statement in his declaration that "[t]here has never existed any exclusivity agreement between Winslyn and Fireclay and/or Niko with regard to the sale of Fireclay sinks to IPT." Stuebner Decl., Ex. 1 to

8

Winslyn's Supp. Resp., dkt. no. 247-1, ¶ 8.

The second e-mail, dated July 2018, was sent by a manager at Ferguson, an American plumbing distribution company. The e-mail appears to recap the contents of a conversation involving Stuebner and a representative of Niko. It states, "All future business accounts in the US will be handled through Winslyn. This will include IPT." Grosfeld E-mail to Wood & Stuebner, Ex. 38 to Winslyn's Resp. to Mots. to Dismiss, dkt. no. 178-27, at 2. Winslyn contends that the e-mail's author was simply mistaken about the existence of the agreement.

These e-mails constitute some evidence that Winslyn and Fireclay agreed that all of Fireclay's sales to Imperial Pacific would go through Winslyn. In particular, the second e-mail appears to reflect statements made by agents of either Winslyn or Fireclay after the preliminary injunction had already issued. But the record also contains contrary evidence. Winslyn and Fireclay point to sworn statements from officers of their companies attesting that no such agreement ever existed. Other e-mail records between Winslyn and Imperial Pacific also seem to suggest that although the two companies sought to negotiate an agreement during 2017, a deal was never reached and the companies had no further dealings. *See* E-mails between Winslyn and Imperial Pacific, Ex. 1 to Welker Decl., dkt. no. 183-2; *see also* Welker Decl., dkt. no. 183-2, ¶ 3 (attesting, as of January 2019, that the attached e-mails constituted all communications between Winslyn and Imperial Pacific).

Faced with this factual uncertainty, the Court cannot find that there was an exclusivity agreement with sufficient confidence to permit an inference that Winslyn was involved with Fireclay's sale of Empire's sinks to Imperial Pacific. Although the

evidence, taken as a whole, suggests the possibility that Winslyn, Fireclay, and Imperial Pacific may have conspired to violate the preliminary injunction, Empire's claims are too speculative on the present record to permit the Court to make such a finding by clear and convincing evidence. The Court therefore denies the motion for an order to show cause why Winslyn should not be held in contempt.

2. **Fireclay and Imperial Pacific**

Empire has also moved to hold Fireclay and Imperial Pacific in contempt for violating the preliminary injunction, relying on the same evidence it cites in its motion against Winslyn. As a threshold matter, however, the Court must separately address Fireclay's argument that the Court lacks jurisdiction to hold it in contempt. The argument lacks merit. The Seventh Circuit held in *Homa* that "a person who knowingly circumvents a freeze order is subject to a show cause order and contempt and thereby submits to the jurisdiction of the court for contempt proceedings." *Homa*, 514 F.3d at 674. The court explained that "[j]urisdiction over persons who knowingly violate a court's injunctive order, even those without any other contact with the forum, is necessary to the proper enforcement and supervision of a court's injunctive authority and offends no precept of due process." *Id.* at 675 (internal quotation marks omitted). The Court therefore need not decide whether it has jurisdiction over Fireclay as a defendant before determining whether contempt is appropriate. Instead, because it is undisputed that Fireclay knew about the preliminary injunction, the jurisdictional question is functionally the same as the substantive question of contempt—namely, whether Fireclay acted in concert with Winslyn to violate the injunction. *Cf. Zenith Radio Corp. v. Hazeltine Res., Inc.*, 395 U.S. 100, 112 (1969) ("[A] nonparty with notice

cannot be held in contempt until shown to be in concert or participation.").

Because the Court has concluded that Empire has not shown by clear and convincing evidence that Winslyn violated the preliminary injunction, it follows that Empire has not proven that Fireclay and Imperial Pacific should be held in contempt for acting in concert with Winslyn. *See Nat'l Spiritual Assembly of the Baha'is*, 628 F.3d at 853 (explaining that nonparty contempt liability for "acting in concert" extends to aiders and abettors); *see also, e.g.*, *Levin v. Tiber Holding Corp.*, 277 F.3d 243, 252 (2d Cir. 2002) ("[T]he district court's finding that Tiber aided and abetted contempt fails for lack of proof of an underlying malfeasance by . . . any other party directly bound by the consent order."); 1 Am. Law of Torts § 3:5.30 ("There can be no aiding and abetting liability absent the commission of an underlying tort."). Though the Court cannot rule out the possibility that further discovery may lead to evidence supporting Empire's contentions, there is an insufficient basis for a contempt finding on the record currently before the Court. The Court therefore denies the motions for contempt against Fireclay and Imperial Pacific.

**B.     Motion to compel**

Empire has moved to compel Winslyn to provide additional discovery responses. Empire first contends that Winslyn has failed to update its answers to two interrogatories. The first interrogatory asks for all models of sinks Winslyn has obtained from Fireclay, along with descriptions of those models. The second requests all shipments by Fireclay of which Winslyn is aware. In addition, Empire contends that Winslyn has failed to produce certain documents, including documents pertaining to each of these interrogatories.

### 1. Interrogatories

Winslyn's objections to updating its interrogatory answers lack merit. First, Winslyn has an ongoing obligation to disclose updated responses to interrogatories, whether or not Empire has specifically asked Winslyn to do so. *See* Fed. R. Civ. P. 26(e)(1)(A). Thus the fact that Empire had previously requested supplemental answers to different interrogatories—i.e., ones other than those at issue this motion—does not somehow obviate Winslyn's duty to update its responses. Winslyn also objects to the phrase "fireclay-style sink," which it says is not adequately defined or explained. But Winslyn does not explain what is vague or ambiguous about that phrase, which Empire has defined as "sinks made out of fireclay material." Empire's Reply in Supp. Mot. to Compel, dkt. no. 217, at 5.

Similarly, the Court is unpersuaded by Winslyn's objection to Empire's interrogatory concerning all Fireclay shipments of which Winslyn is aware. Winslyn argues that Empire is improperly seeking to shift its obligation to obtain discovery from third parties, but this mischaracterizes the interrogatory. Empire has asked for information only about Fireclay's sales of which Winslyn is aware, which is an appropriate request in the context of this case.

Winslyn's objections do not constitute a basis to deny the motion to compel. The Court therefore grants Empire's motion to compel Winslyn to provide updated responses to Empire's second interrogatory from its first set of interrogatories and its second interrogatory from its first amended expedited interrogatories. Those updated responses are to be provided by July 12, 2019.

### 2. Document production

Empire has also moved to compel Winslyn to produce additional documents in response to its requests for production. For the most part, Winslyn denies that any additional responsive documents exist, especially insofar as Empire seeks evidence of Winslyn's alleged exclusivity agreement with Fireclay or its alleged conspiracy to violate the preliminary injunction. But Winslyn must conduct a reasonable investigation to ensure that it has turned over all documents within its control that are responsive to Empire's requests, including any documents related to the reconsignment of Empire's sinks to Imperial Pacific. In addition, Winslyn must produce documents pertaining to the updated interrogatory responses the Court has ordered it to provide.

Empire also argues that Winslyn followed improper procedures for determining which documents to disclose. It contends that Winslyn's attorneys allowed their client to hand-pick which documents to turn over and that instead they should have turned over their documents to a third-party vendor for review and disclosure. But Empire does not cite authority supporting a categorical rule that litigants must hire outside vendors for document production, and the Court declines to require Winslyn to do so. The Court cautions, however, that if it later determines that Winslyn has failed to conduct a reasonable investigation to uncover and disclose all responsive documents, sanctions, including a finding of contempt, may be appropriate. *See* Fed. R. Civ. P. 37(b)(2)(vii).

### C. Motion to modify the preliminary injunction

Finally, Empire has moved to modify the preliminary injunction. The current injunction bars Winslyn from purchasing, marketing, or selling sinks of Empire's design; Empire seeks to broaden the injunction to include any sinks manufactured using

Empire's molds. Fireclay submitted a declaration from its managing director Peter Shilling, who attests that the company no longer uses those molds to manufacture any sinks. If Fireclay's representation is accurate, Empire's request for injunctive relief is moot. *Cf. Valencia v. City of Springfield*, 883 F.3d 959, 965 (7th Cir. 2018) (noting that a party seeking a preliminary injunction must show that "absent a preliminary injunction it will suffer irreparable harm in the interim period prior to the final resolution of its claims."). Because Empire has not yet had an opportunity to respond to this contention or submit evidence of the ongoing need for injunctive relief, a ruling on the motion to modify the preliminary injunction would be premature.

## Conclusion

For the foregoing reasons, the Court denies the plaintiff's motions for contempt against Imperial Pacific Trading, LLC [dkt. no. 189], The Fireclay Factory LLC [dkt. no. 197, 198], and Winslyn Industries, LLC [dkt. no. 239] and grants the plaintiff's motion to compel [dkt. no. 207, 208]. The plaintiff's motion to modify the preliminary injunction as to Winslyn, which is part and parcel of one or more of the just-cited motions, remains pending.

_____
MATTHEW F. KENNELLY
United States District Judge

Date: June 30, 2019