IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| EMPIRE INDUSTRIES, INC., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 18 C 698 |
| ) | |
| WINSLYN INDUSTRIES, LLC, ) | |
| THE FIRECLAY FACTORY LLC, ) | |
| NIKO (INT) LTD., and ) | |
| IMPERIAL PACIFIC TRADING, LLC, ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

Empire Industries, Inc. has sued Winslyn Industries, LLC, The Fireclay Factory LLC, Niko (INT) Ltd., and Imperial Pacific Trading, LLC. Fireclay has moved to dismiss the claims against it under Federal Rule of Civil Procedure 12(b)(5) for improper process, Rule 12(b)(2) for lack of personal jurisdiction, and the doctrine of *forum non conveniens*.

## Background

The Court assumes familiarity with this case's factual and procedural background, which the Court has described in its prior written opinions. *See Empire Indus. Inc. v. Winslyn Indus., LLC*, No. 18 C 698, 2019 WL 2743470 (*Ruling on Motions for Contempt and to Compel*), at *1 (N.D. Ill. June 30, 2019); *Empire Indus. Inc. v. Winslyn Indus., LLC* (*Ruling on Niko and Imperial's Motions to Dismiss*), No. 18 C 698, 2019 WL 339544 (N.D. Ill. Jan. 28, 2019); *Empire Indus. Inc. v. Winslyn Indus., LLC*

(*Preliminary Injunction Ruling*), 327 F. Supp. 3d 1101, 1106 (N.D. Ill. 2018). The following is brief synopsis of the factual and procedural background, as relevant for the purposes of the present order.

**A.      Factual background**

In considering Fireclay's motion to dismiss, the Court accepts the facts in the complaint as true and considers "matters outside of the pleadings to resolve factual questions pertaining to jurisdiction [and] process." [1] *Deb v. SIRVA, Inc.*, 832 F.3d 800, 808–809 (7th Cir. 2016). Empire is a New Jersey company that manufactures and distributes bathroom and kitchen products. Fireclay is a company based in the United Arab Emirates (UAE) that manufactures "fireclay-style" sinks, which are formed from clay fired at very high temperatures. Fireclay's principal place of business, offices, factories, and employees are not located in Illinois.

In July 2016, Empire and Fireclay began to discuss the prospect of Fireclay manufacturing products for Empire, and Empire began sending sink designs to Fireclay. In March 2017, Empire agreed to provide Fireclay with certain sink designs, and Fireclay agreed to treat them as confidential and to produce sinks based on the designs exclusively for Empire and not for any other sellers in the United States.

That same month, however, Fireclay began to market the designs to other customers and prospective customers, including Winslyn, another seller of kitchen

---

[1] Fireclay has submitted as an exhibit a nine-page document titled "Facts That Appear To Contradict Or Differ From The Allegations Made In The Third Amended Complaint." Fireclay's Mem. in Support of Mot. to Dismiss, Ex. 3. This document addresses the merits of the case, which, as indicated, is improper at this stage of the proceedings. It also constitutes an unauthorized brief exceeding the page limit. *See* N.D. Ill. L.R. 7.1. For these reasons, the Court has disregarded the document.

products, which is located in Illinois. Empire alleges that, in March and April, Winslyn ordered certain sinks from Fireclay. It has submitted copies of e-mails exchanged in April between Peter Shilling, Fireclay's managing director, and Bill Stuebner, Winslyn's president, founder, and part owner, regarding arrangements for the shipment of four "sample pieces" to Winslyn. WINSLYN00000450. In one e-mail, Stuebner wrote that each sample piece would "come to our warehouse." *Id.* Empire has also submitted Winslyn's response to an interrogatory request in which Winslyn stated that it received sink samples from Fireclay in early March, late April and/or early May.

By June, Winslyn had secured a significant order of sinks from Menards, a major retailer, but the sinks Menards selected were based on the designs Fireclay had agreed to make exclusively for Empire. Fireclay advised Winslyn that the sinks were not available, but, after pressure from Winslyn, Fireclay agreed to make a minor, inconsequential alteration to one panel of the sink for Winslyn. In doing so, Fireclay used the mold forms that it had already set up for Empire, swapping out one piece from the forms.

By July 2017, Winslyn's customers placed orders for these new sinks, which Fireclay fulfilled starting in January 2018. The exact locations to which Fireclay shipped those sinks are not clear from the evidence before the Court on the present motion.

In the meantime, Fireclay delivered sinks to Empire at a slower-than-expected pace. In November 2017, Jacob Goren, Empire's chief executive, visited Fireclay's factory in the UAE and noticed sinks that varied only slightly from the sinks he had designed. When confronted, Fireclay's managing director Shilling initially denied that Fireclay was shipping any sinks using Empire's mold to North America and reaffirmed

3

the exclusivity agreement. Later, however, Empire learned that Fireclay was, in fact, selling these sinks to Winslyn. In December 2017, Fireclay terminated its relationship with Empire.

**B.    Procedural background**

In January 2018, Empire filed this suit against Winslyn. It amended its complaint in March and moved for a preliminary injunction in April. On May 15, while its motion for a preliminary injunction was pending, Empire again amended its complaint and added as defendants Fireclay and Niko, an associated entity.

In June 2018, after an evidentiary hearing, the Court granted Empire's motion for a preliminary injunction. *Preliminary Injunction Ruling*, 327 F. Supp. 3d at 1118. In July, Winslyn moved to clarify the injunction order, and the Court granted that motion in part. As clarified, the preliminary injunction enjoined Winslyn and "anyone else affiliated or acting in concert with it, pending the trial or other disposition of this case, from purchasing, marketing, or selling sinks obtained from [Fireclay] with a design that is identical to or visually indistinguishable from" certain of Empire's designs. Dkt. no. 105.

In October 2018, Empire amended its complaint a third time and added as a defendant Imperial, another company that sells sinks. Niko and Imperial each moved to dismiss the complaint for lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2). The Court granted the motions to dismiss in part, and, as indicated, dismissed all of the claims against Niko and all claims against Imperial except for Empire's request for a contempt finding. *Ruling on Motions to Dismiss*, 2019 WL 339544, at *5.

In the third amended complaint, which is the operative complaint, Empire asserts

4

five claims against Fireclay. Count 3 is a claim seeking injunctive relief from all of the defendants, which the Court has dismissed because it does not assert a separate claim. Dkt. no. 151. Count 4 is a breach of contract claim. Count 5 is a claim against Fireclay for fraud, based on allegedly false statements by Shilling that Empire was not selling sinks based on Empire's design in North America, which Shilling said at Fireclay's factory, as well as unspecified statements made in writing. Count 6 is a claim against Fireclay for conversion in which Empire alleges that the sinks produced by Fireclay using Empire's design are Empire's property and that Fireclay converted them by retaining them and shipping them to Winslyn before the Court issued the preliminary injunction and, after the Court issued it, shipping more of Empire's sinks to Winslyn and/or Imperial. Count 7 is a claim against all defendants for civil conspiracy. Empire alleges that Fireclay, Niko, and Imperial have schemed to interfere with and breach Empire's contractual rights; unjustly obtain benefits from Empire's designs; carry out Fireclay's fraudulent scheme to use Empire's designs for its own benefit; and "attempt to evade the effect of the Court's [Preliminary Injunction Ruling] and dispose of inventory subject to that order." 3d Am. Compl. ¶ 95.

Though Empire had added Fireclay as a defendant in May 2018, by February 2019, Empire had not served Fireclay. On February 21, 2019, Empire filed a motion requesting the issuance of a letter rogatory and leave to issue a summons upon Fireclay. Fireclay filed a response to that motion. In April 2019, the Court held a hearing on the motion and, in particular, arguments by Fireclay that Empire failed to diligently attempt service. Empire explained that it delayed serving Fireclay in part by saying it anticipated difficulties in serving summons in the UAE—a reason the Court

5

indicated might not be "terribly significant in the scheme of things."  April 23, 2019 Hr'g Tr. at 11:19–25.  The Court found Empire's other reason was more significant:  Empire had hoped or expected that the Court's issuance of a preliminary injunction in June 2018 would resolve the dispute between the parties, rending service of process upon Fireclay unnecessary.  As the Court indicated at the hearing, Empire alleged that subsequent activity involving Fireclay led it "to conclude that it needed to proceed with the case" and therefore take steps to effectuate service upon Fireclay.  *Id.* at 12:1–11.  At the end of the hearing, the Court found that Empire had good cause to excuse the delay in service of process up to that point, granted Empire leave to serve Fireclay, and issued a letter of rogatory.

On May 10, 2019, Fireclay issued a summons as to Fireclay.  On January 16, 2020, Empire served Fireclay in the UAE by sending the third amended complaint and a summons via a standard courier, and Fireclay accepted the package.

As indicated, Fireclay has moved to dismiss Empire's claims against it for improper process under Rule 12(b)(5), lack of personal jurisdiction under Rule 12(b)(2), and under the doctrine of *forum non conveniens*.

## Discussion

**A.    Insufficient service of process**

Fireclay has moved under Rule 12(b)(5) to dismiss the case for insufficient service of process.  It argues that Empire's service of process was insufficient because, it contends, Empire took too long to attempt to serve Fireclay or complete service.[2]

---

[2] To the extent Fireclay also contends that the manner in which Empire served it—i.e., through a common commercial courier service—was insufficient, Fireclay has not explained that contention or cited any legal authority in support of it.  Accordingly, the

6

Specifically, Fireclay contends the claims against it should be dismissed because Empire did not attempt to serve it for 274 days[3] and did not complete service until two years after the filing of the lawsuit. On the latter point, the Court notes that service was accomplished just under one year and eight months after Empire named Fireclay as a defendant—603 days, to be exact.[4]

Federal Rule of Civil Procedure 4(m) provides a time limit—currently, 90 days after the complaint is filed—by which a plaintiff must serve a defendant. Fed. R. Civ. P. 4(m). The rule expressly states, however, that this time limit "does not apply to service in a foreign country." *Id.* As the Seventh Circuit has explained, the "rule seems to recognize that the timeliness of foreign service is often out of the plaintiff's control." *Nylok Corp. v. Fastener World Inc.*, 396 F.3d 805, 807 (7th Cir. 2005).

That said, "the amount of time allowed for foreign service is not unlimited." *Id.* Recognizing the need for district courts "to be able to control their dockets," the Seventh Circuit has indicated "it might be proper" for a court to dismiss a claim "[i]f, for example, a plaintiff [has] made no attempt to begin the process of foreign service within" the time limit provided by Rule 4(m). *Id.* (discussing an older version of the rule, which allowed 120 days for service). In applying this principle, other courts have determined that a district court may, in its discretion, dismiss a case where "the plaintiff has not

---

Court declines to address the point.

[3] Fireclay has calculated this 274-day delay based on the amount of time that passed between when Empire named Fireclay as a defendant in the second amended complaint on May 23, 2018 and when Empire moved on February 21, 2019 for a letter of rogatory and leave to issue a summons to Fireclay.

[4] As indicated, Empire named Fireclay as a defendant in the second amended complaint on May 23, 2018 and served Fireclay on January 16, 2020.

7

demonstrated reasonable diligence in attempting service." *Lozano v. Bosdet*, 693 F.3d 485, 489 (5th Cir. 2012) (citing *Nylok*, 396 F.3d at 807); *Papst Licensing GmbH & Co. KG v. Sunonwealth Elec. Mach. Ind. Co.*, 332 F. Supp. 2d 1142, 1151 (N.D. Ill. 2004) (considering "the reasonableness of the plaintiff's effort" in effecting service in a foreign country, "as well as the prejudice to the defendant from any delay"); *see also Feliz v. MacNeill*, 493 F. App'x 128, 132–33 (1st Cir. 2012) (Souter, J., sitting by designation) ("[E]ven a 426–day failure [to serve a foreign defendant] does not absolutely mandate dismissal, but it requires a powerful showing of good cause to excuse.").

The parties dispute whether dismissal for improper service is appropriate after a defendant already has accepted service, as Fireclay acknowledges it has done. The Court need not address that issue, however, because it concludes that dismissal of the claims against Fireclay is not warranted. This is because, as the Court has previously found, Empire has demonstrated a sufficient reason to excuse the delay in service. Specifically, as indicated, in April 2019, the Court found that Empire had a sufficient basis to excuse the delay in service of process up to that point. The Court found that one of Empire's reasons for the delay—difficulties it anticipated in issuing service in the UAE—was not particularly significant. But it found Empire's other reason to be more significant: Empire had hoped or expected that the Court's issuance of the preliminary injunction in June 2018 would resolve the dispute between the parties, rending service of process unnecessary. As the Court indicated at the hearing, Empire had alleged that subsequent activity involving Fireclay led it "to conclude that it needed to proceed with the case" against Fireclay. April 23, 2019 Hr'g Tr. at 12:1–11. The Court found this was a sufficient reason to excuse the delay and granted Empire leave to serve Fireclay with

8

a letter of rogatory. Though Fireclay, in its reply brief, now disputes the basis for the Court's findings, it has not asked the Court to reconsider its ruling, and the Court declines to do so.

If Fireclay is contending that Empire lacked reason to excuse the delay from the date of the Court's ruling in April 2019 until it accepted service in January 2020, that contention lacks merit. There is no indication that Empire failed to make efforts after the April 2019 hearing to serve Fireclay or that its efforts were unreasonable. Empire issued the summons to Fireclay in May 2019, just a month after the Court issued its ruling, which, if anything, this shows that Empire *was* making efforts to complete service. And it is understandable that the completion of service in a foreign country may take some time and "is often out of the plaintiff's control." *Nylok*, 396 F.3d at 807. Indeed, Empire has explained that when this case started, procedural requirements in the UAE, which is not a party to the Hague Convention, made the issuance of summons there challenging, but that later changes were made to the UAE's rules that made it easier for Empire to complete service.

Further, Fireclay does not appear to suggest it has suffered prejudice. It contends that Empire issued service after Empire had "presented evidence, sought and received determinations from the Court regarding facts and liability, and conducted extensive discovery." Fireclay's Mem. at 9. But Fireclay admits it was aware of the lawsuit all along. More importantly, it has not explained how, if at all, the delay in service caused it prejudice. The determinations the Court made in issuing the preliminary injunction against Winslyn will not be determinative of Fireclay's liability on the merits. And if Fireclay needs to retake any depositions that were taken earlier, the

9

Court will be open to that.

For these reasons, the Court concludes that Empire's service of process to Fireclay was not improper and denies Fireclay's motion to dismiss the claims under Rule 12(b)(5).

**B. Personal jurisdiction**

Fireclay also has moved under Rule 12(b)(2) to dismiss the claims against it for lack of personal jurisdiction. The plaintiff bears the burden of establishing that personal jurisdiction exists. *Matlin v. Spin Master Corp.*, 921 F.3d 701, 705 (7th Cir. 2019). Where, as here, the defendant submits evidence in opposition to the exercise of jurisdiction, the plaintiff must go beyond the pleadings and submit affirmative evidence to support personal jurisdiction. *Id.* Because the Court bases its decision solely on written materials and not on an evidentiary hearing, Empire "must only make a *prima facie* showing of personal jurisdiction over [Fireclay] to survive [the] motion to dismiss." *See id.* The Court accepts as true all well-pleaded allegations in the complaint and resolves any factual disputes in the evidence in favor of the plaintiff. *Id.*

A federal court hearing a case pursuant to diversity jurisdiction (as in this case) has jurisdiction over a defendant if a state court in the forum state would have jurisdiction over the defendant. *See, e.g.*, *id.* Illinois's long-arm statute permits the exercise of personal jurisdiction if it would be permitted under either the Illinois Constitution or the United States Constitution. *See* 735 ILCS 5/2-209(c). The Seventh Circuit has found that usually "there is no operative difference between Illinois constitutional and federal constitutional limits on personal jurisdiction." *Philos Techs., Inc. v. Philos & D, Inc.*, 802 F.3d 905, 912 (7th Cir. 2015) (internal quotation marks

omitted). The Court therefore analyzes personal jurisdiction using the framework provided by federal due process requirements. *See id.*

Due process permits a court to exercise personal jurisdiction over an out-of-state defendant if it has "minimum contacts with [the forum state] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. State of Wash., Office of Unemployment Comp. & Placement*, 326 U.S. 310, 316 (1945) (internal quotation marks omitted). The contacts with the forum state must be purposely established by the defendant, "such that he should reasonably anticipate being haled into court there." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474–75 (1985).

There are two types of personal jurisdiction, general and specific. In this case, Empire relies on specific jurisdiction, which is "is available for a suit that arises out of the forum-related activity." *Advanced Tactical Ordnance Sys., LLC v. Real Action Paintball, Inc.*, 751 F.3d 796, 800 (7th Cir. 2014). The parties dispute whether Fireclay had sufficient minimum contacts with Illinois to establish specific jurisdiction. The Court addresses specific jurisdiction first as it applies to the breach-of-contract claim and then as it applies to the tort claims.

### 1. Breach-of-contract claim

In its breach-of-contract claim, Empire contends that Fireclay breached its contract with Empire by, among other things, shipping sample sinks made from Empire's designs and molds to Winslyn in Illinois. As an initial matter, the Court addresses the question of whether in fact Fireclay shipped sample sinks to Illinois. Fireclay has submitted a declaration from Shilling, its managing director, reflecting,

among other things, that Fireclay has no employees, offices, or property in Illinois and does not generally ship products it is selling to Illinois. In response, Empire points to e-mails exchanged between Shilling and Stuebner, Winslyn's president, founder, and part owner, regarding arrangements for the shipment of four "sample pieces" to Winslyn. WINSLYN00000450. In one e-mail, Stuebner wrote that each sample piece would "come to our warehouse," though he did not identify its location in the e-mail. *Id.* Empire has also submitted Winslyn's response to an interrogatory request in which Winslyn stated that it received sink samples from Fireclay in early March, late April and/or early May; it does not indicate where the sinks were delivered. To the extent Fireclay disputes whether it shipped sample sinks to Illinois, the Court resolves factual disputes in favor of the plaintiff on a Rule 12(b)(2) motion, as indicated, and thus takes Empire's submissions as evidence that Fireclay shipped sample sinks to Winslyn and infers those sinks were shipped to Illinois.

In support of its motion to dismiss, however, Fireclay asserts that "only the dealings between the parties in regard to the disputed contract" are relevant to the minimum contacts analysis. Fireclay's Mem. at 14 (quoting *RAR, Inc. v. Turner Diesel, Ltd.*, 107 F.3d 1272, 1278 (7th Cir. 1997)). With regard to the breach of contract claim, Fireclay contends it did not have the requisite minimum contacts with Illinois because Empire and Fireclay did not negotiate their agreement in Illinois, pay for it in Illinois, or intend for it to be performed in Illinois.

Relevant contacts are not, however, limited strictly to interactions between the parties to a disputed contract, as Fireclay suggests. Rather, the "defendant's conduct must form the necessary [jurisdictional] connection with the forum State." *Walden v.*

12

*Fiore*, 571 U.S. 277, 285 (2014). To be sure, an out-of-state party's formation of a contract with an in-state party generally is not enough by itself to support personal jurisdiction. *Philos Techs.*, 802 F.3d at 913. But relevant conduct can include the defendant's "transactions or interactions with the plaintiff or other parties." *Walden*, 571 U.S. at 286. Indeed, in *RAR*, the Seventh Circuit stated that, for breach-of-contract claims, contacts are "relevant for personal jurisdiction" where they "either bear on the substantive legal dispute between the parties or inform the court regarding the economic substance of the contract." *RAR*, 107 F.3d at 1278.

Fireclay's shipment of sample sinks to Winslyn in Illinois shows sufficient contacts with Illinois to support personal jurisdiction. To be sure, the agreement between Empire and Fireclay did not by its terms contemplate that Fireclay would have contact with Illinois. But the shipments of the sinks to Illinois bear on the substantive dispute between Empire and Fireclay because they go to the question of whether Fireclay breached the agreement. Stated differently, Fireclay's shipments of sinks to Winslyn were not "random, fortuitous, or attenuated" connections to Illinois but rather were deliberate actions directly connected to its alleged breach of the contract with Empire. *See Walden*, 571 U.S. at 286. And it does not matter if, as Fireclay contends, most of the other alleged breaches occurred outside of Illinois; only minimum contacts between the defendant and the forum state are necessary for personal jurisdiction. *See,* e.g.*, id.* at 285.

For these reasons, the Court concludes that Fireclay had sufficient minimum contacts with Illinois to support personal jurisdiction for Empire's breach-of-contract claim.

### 2. Tort claims

Empire has asserted three tort claims against Fireclay, as indicated, for fraud, conversion, and civil conspiracy. Fireclay contends personal jurisdiction in Illinois is lacking for these claims. Specifically, it contends that each of its allegedly fraudulent statements were made outside of Illinois, as Empire has conceded; that it allegedly converted Empire's sinks when it retained them in the UAE, not when it shipped sinks to Winslyn in Illinois; and that none of the torts underlying the alleged conspiracy between Fireclay, Niko, and Imperial relate to Illinois.

The "same principles" that apply to questions of personal jurisdiction concerning breach-of-contract claims also "apply when intentional torts are involved." *Id.* at 286. Accordingly, in the tort context, personal jurisdiction "must be based on intentional conduct by the defendant that create[d] the necessary contacts with the forum." *Id.* A court's "jurisdictional inquiry focuse[s] on the relationship among the defendant, the forum, and the litigation." *Id.* at 287 (internal quotation marks omitted) (no personal jurisdiction where the defendant "never traveled to, conducted activities within, contacted anyone in, or sent anything or anyone to" the forum state); *see also Advanced Tactical Ordnance*, 751 F.3d at 801 ("Specific jurisdiction must rest on the *litigation-specific* conduct of the defendant in the proposed forum state.").

As with the breach-of-contract claim, Fireclay's shipments of sample sinks to Illinois created jurisdictionally sufficient contacts with this forum. This is because the shipments are closely related each of the tort claims. Specifically, they are closely related to questions concerning, among other things, whether Fireclay's statement to that it was not shipping Empire's sinks to other North American sellers was false;

whether Fireclay converted Empire's sinks and sent them to Illinois; and whether Fireclay, Winslyn, and Imperial conspired to convert Empire's property and ship it to Illinois.[5] And the connection between Fireclay's conduct and Illinois was not merely random, as Fireclay contends; it was closely related to the tort claims. *Cf. Philos Techs.*, 802 F.3d at 914–16 (no personal jurisdiction where defendants' interactions with the forum state were "mostly incidental" and not "sufficiently related" to the lawsuit).

Fireclay contends that the tort claims are not sufficiently connected to Illinois because the underlying allegedly tortious conduct did not take place in Illinois and was not directed at Illinois, and Empire did not experience the effects of injury in Illinois. But "[t]he proper question is not where the plaintiff experienced a particular injury or effect but whether the defendant's conduct connects [it] to the forum in a meaningful way." *Walden*, 571 U.S. at 290. To be sure, the "effects" of a defendant's conduct can connect it to a forum state in a way sufficient to support personal jurisdiction. *See id.* at 286–88 (discussing *Calder v. Jones*, 465 U.S. 783 (1984)). And a defendant can also create sufficient contact with a forum state by carrying out an element of an alleged tort in that state. *See id.* at 288. But those are not the only kind of actions by a defendant that can create relevant contacts with a forum. *See, e.g.*, *id.* at 285 ("[A]lthough physical presence in the forum is not a prerequisite to jurisdiction, physical entry into the State—either by the defendant in person or through an agent, goods, mail, or some

---

[5] Fireclay contends that Empire's civil conspiracy claim is improperly based on conduct that occurred, at least in part, after it filed this lawsuit, which it contends may not be considered by the Court in addressing personal jurisdiction. The Court need not address the merits of that contention, however. The civil conspiracy claim is also premised on conduct that allegedly occurred before Empire filed the lawsuit, and that is the conduct that the Court has considered in this opinion.

15

other means—is certainly a relevant contact." (internal citation omitted)). For the reasons just explained, Fireclay's shipments of the sinks to Illinois constituted intentional conduct that created the necessary minimum contacts with this forum.

In sum, the Court concludes Fireclay had sufficient contacts with Illinois to give rise to personal jurisdiction. This conclusion does not offend "traditional notions of fair play and substantial justice," *Int'l Shoe*, 326 U.S. at 316, because adjudicating the suit in Illinois would advance Empire's interest obtaining effective relief in a reasonably convenient way, as well as the judicial system's interest in resolving disputes in the most efficient way, *see Curry v. Revolution Laboratories, LLC*, 949 F.3d 385, 396 (7th Cir. 2020). In addition, though it may be inconvenient for a UAE-based company like Fireclay to adjudicate a case in Illinois, adjudicating the case in a different United States district would not lessen any inconvenience to Fireclay, and Fireclay, as the Court will discuss momentarily, has not established that a court in the UAE would be a better forum. *See id.* Therefore, the Court concludes it has personal jurisdiction over Empire's claims against Fireclay and denies Fireclay's motion to dismiss on that ground.

**C.     Forum non conveniens**

Finally, Fireclay moves to dismiss the claims against it on the basis of *forum non conveniens*. Under the doctrine of *forum non conveniens*, as it is applied today, a federal court has discretion to dismiss a case where "there are strong reasons for believing it should be litigated in the courts of another, normally a foreign, jurisdiction." *Deb*, 832 F.3d at 805 (internal quotation marks omitted). Such a dismissal may be appropriate where a plaintiff's "chosen forum would establish oppressiveness and vexation to a defendant out of all proportion to plaintiff's convenience" or would be

"inappropriate because of considerations affecting the court's own administrative and legal problems." *Id.* (quoting *Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 429 (2007)).

Dismissal on the ground of *forum non conveniens* is "exceptional," and a court must use the doctrine "sparingly." *Id.* A defendant invoking the doctrine typically "bears a heavy burden." *Id.* at 806. Where, however, a plaintiff's chosen forum is not its home forum, "the presumption in the plaintiff's favor 'applies with less force'" because there is a greater risk that the chosen forum "has little connection to the litigation." *Id.* (quoting *Sinochem*, 549 U.S. at 430). In this case, Empire's chosen forum is not its home forum, though the Court notes that this forum has some connection to the litigation, as discussed earlier with regard to personal jurisdiction.

At the threshold, a defendant seeking dismissal of a case based on *forum non conveniens* must demonstrate that "an alternative and adequate forum" exists by presenting evidence showing an alternative forum's availability and adequacy. *Id.* at 807, 810. "An alternative forum is available if all parties are amenable to process and are within the forum's jurisdiction." *Id.* at 807. It is "adequate when the parties will not be deprived of all remedies or treated unfairly." *Id.* If the defendant satisfies that burden, the court goes on to "balance the interests of the various participants" in the litigation. *Id.* (reversing district court's dismissal of action under doctrine of *forum non conveniens* where the defendants did not submit evidence demonstrating the existence of an adequate and alternative forum).

Fireclay argues that dismissal under the doctrine of *forum non conveniens* is appropriate because, it contends, litigating the case in the UAE, where much of the

evidence and many of the witnesses are located, would be most convenient to the parties and would serve the ends of justice. But Fireclay has not met its threshold burden because it has provided no evidence that the UAE is an adequate forum in which the parties would not be deprived of remedies or treated unfairly. It contends only that the UAE is an adequate forum because other courts have determined it to be one. But "generalized information" about cases involving "other facts and other parties" does not suffice to show that Empire "realistically" could sue Fireclay in the UAE for each claim at issue in this case. *See id.* at 813; *cf. Fischer v. Magyar Allamvasutak Zrt.*, 777 F.3d 847, 867 (7th Cir. 2015) (defendant submitted evidence sufficient to demonstrate a foreign forum's adequacy where the record included "a list of the available remedies" in the forum and "expert testimony from both sides on whether [the plaintiff's] concerns [with bringing the suit there] were enough to render the forum inadequate"). And even if it did, the cases to which Fireclay cites do not establish that the UAE's legal system provides remedies for *each* of Empire's claims. *See, e.g.*, *Capital Trans Int'l, LLC v. Int'l Petroleum Inv. Co.*, No. 8:10-CV-529-T-30TGW, 2013 WL 557236, at *16 (M.D. Fla. Feb. 14, 2013) (stating that the UAE recognizes a cause of action for "breach of contract" without addressing the other types of claims Empire has asserted), *vacated in part*, 2013 WL 12344236 (M.D. Fla. Feb. 25, 2013).

The Court thus concludes that the Fireclay failed to meet its burden—whether heavy or not—of demonstrating that the UAE is an available and adequate forum for this litigation. Accordingly, the Court denies Fireclay's motion to dismiss the case under the doctrine of *forum non conveniens*.

## Conclusion

For the foregoing reasons, the Court denies Fireclay's motion to dismiss [dkt. no. 297]. This renders moot Fireclay's motion to stay discovery pending a ruling on its motion to dismiss [dkt. no. 307].

```
                              _____
                                    MATTHEW F. KENNELLY
                                  United States District Judge
```

Date: June 11, 2020