IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| EMPIRE INDUSTRIES INC., | ) |
| Plaintiff, | ) ) ) |
| vs. | ) ) Case No. 18 C 698 |
| WINSLYN INDUSTRIES, LLC, et al., | ) ) ) |
| Defendants. | ) ) |

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

Empire Industries Inc., a bathroom and kitchen product distributor, contends that it entered into an exclusive agreement with The Fireclay Factory LLC, a sink manufacturer, to supply certain sinks. Empire originally sued Winslyn Industries, LLC, another distributor, claiming tortious interference with the Empire-Fireclay agreement. Later, Empire added claims against Fireclay for, among other things, breach of contract and fraud. Fireclay has counterclaimed, asserting claims against Empire for tortious interference with prospective advantage and breach of contract. Empire has moved under Federal Rule of Civil Procedure 12(b)(6) to dismiss these claims. For the reasons stated below, the Court dismisses Fireclay's breach of contract claim but declines to dismiss its tortious interference claim.

### Background

The Court assumes familiarity with this case's factual and procedural background, which the Court has described in its prior written opinions. *See Empire*

*Indus. Inc. v. Winslyn Indus., LLC*, No. 18 C 698, 2020 WL 3100581 (N.D. Ill. June 11, 2020) (*Ruling on Fireclay's Motion to Dismiss*); *Empire Indus. Inc. v. Winslyn Indus., LLC*, No. 18 C 698, 2019 WL 2743470 (N.D. Ill. June 30, 2019) (*Ruling on Motions for Contempt and to Compel*); *Empire Indus. Inc. v. Winslyn Indus., LLC*, No. 18 C 698, 2019 WL 339544 (N.D. Ill. Jan. 28, 2019) (*Ruling on Niko and Imperial's Motions to Dismiss*); *Empire Indus. Inc. v. Winslyn Indus., LLC*, 327 F. Supp. 3d 1101 (N.D. Ill. 2018) (*Preliminary Injunction Ruling*). The following is a brief synopsis of the factual and procedural background, as relevant for the purposes of the present order.

Empire is a New Jersey-based manufacturer and distributor of bathroom and kitchen products. It contends that it entered into an agreement with Fireclay, a United Arab Emirates-based (UAE) manufacturer of "fireclay-style" sinks, which are formed from clay fired at very high temperatures, to manufacture certain sink designs exclusively for Empire. Empire further contends that Fireclay then produced sinks with an indistinguishable design for Winslyn, another distributor. In January 2018, Empire sued Winslyn, claiming tortious interference with the exclusive agreement between Empire and Fireclay. In June 2018, the Court preliminarily enjoined Winslyn "and anyone affiliated or acting in concert with it . . . from purchasing, marketing, or selling sinks obtained from The Fireclay Factory, LLC based on plaintiff Empire Industries, LLC's . . . designs." *Preliminary Injunction Ruling*, 327 F. Supp. 3d at 1118. The Court then modified the injunction to apply only to "sinks obtained from The Fireclay Factory, LLC with a design that is identical to or visually distinguishable from plaintiff Empire Industries, LLC's Olde London and Sutton Place designs." *See* Modified Prelim. Inj. Order (dkt. no. 105).

As indicated earlier, Empire later added a claim against Fireclay for breach of contract. Fireclay has asserted a two-count counterclaim against Empire, which Empire has moved to dismiss. In considering Empire's motion to dismiss, the Court accepts as true the facts alleged in the counterclaim. *O'Boyle v. Real Time Resolutions, Inc.*, 910 F.3d 338, 342 (7th Cir. 2018).

Fireclay alleges that shortly after Empire obtained the preliminary injunction against Winslyn, Empire contacted certain Fireclay customers and told them that purchasing certain sinks from Fireclay would violate the injunction; a contract between Empire and Fireclay prevented the purchase of those sinks; and Empire would sue the customers if they purchased or sold any sinks allegedly covered by the contract. Fireclay contends that all of these representations were false. The entities that Empire allegedly contacted include Imperial Pacific Trading, LLC (IPT), Thompson Traders, Inc., Pelican Sinks International (Pelican), Domain Industries (Domain), and Menards— all of which are existing or prospective Fireclay customers. Fireclay asserts that it had sold or was planning to sell sinks to some or all of these customers. Fireclay claims it had a reasonable business expectation to market and sell its sinks to these customers, but Empire's interference in the relationships caused Fireclay to lose the customers' business.

Fireclay also alleges—in the alternative to its denial that an enforceable contract exists[1]—that Empire breached its contract based on seven instances of conduct:

---

[1] As the Court explained in the preliminary injunction ruling, Empire's principal, Jacob Goren, contends that he urged Fireclay to uphold an exclusivity agreement between Fireclay and Empire, but Fireclay denies the existence of a binding exclusivity agreement to sell Empire's sink design. *Preliminary Injunction Ruling*, 327 F. Supp. 3d

3

> (a) failing to order the sinks in the quantities required; (b) failing to order the sinks exclusively from Fireclay; (c) threatening to order the sinks from other suppliers; (d) threatening to end its relationship with Fireclay altogether on a regular basis; (e) breaching the [implied] covenant of good faith and fair deal by failing to timely provide Fireclay information on the type and quantity of sinks required; (f) defaming Fireclay and misrepresenting Fireclay's obligations as set forth in Count I above; and (g) otherwise.

Def.'s Countercl. (dkt. no. 342) ¶ 98. In short, Fireclay alleges that Empire's failure to meet its contractual obligations, "to the extent such a contract is implied," gives rise to a breach of contract claim. *Id.* ¶ 97.

## Discussion

Empire has moved to dismiss Fireclay's claims under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted. To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a counterclaim must allege facts sufficient "to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inferences that the defendant is liable for the misconduct alleged." *Sloan v. Am. Brain Tumor Ass'n*, 901 F.3d 891, 894 (7th Cir. 2018) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). At this stage, the law does not impose a highly exacting standard on Fireclay, however: "[t]he plausibility standard is not akin to a 'probability requirement.'" *Iqbal*, 556 U.S. at 678. Fireclay's burden to avoid dismissal is limited to alleging "enough details about the subject-matter of the case to present a story that holds together." *Swanson v. Citibank, N.A.*, 614 F.3d 400, 404 (7th Cir. 2010). That

---

at 1107. On December 29, 2017, Fireclay "notified Empire it terminated any contractual relationship they had." *Id.*

4

said, in ruling on a motion to dismiss, the Court is "not obliged to accept as true legal conclusions or unsupported conclusions of fact." *St. John's United Church of Christ v. City of Chicago*, 502 F.3d 616, 633 (7th Cir. 2007) (internal quotation marks omitted).

The parties dispute which state's law governs Fireclay's claims. Fireclay contends, in a footnote, that the law of the United Arab Emirates applies. *See* Def.'s Resp. to Mot. to Dismiss (dkt no. 396) at 7 n.5. It has forfeited this contention, however, by making it in a perfunctory way, relegating it to a footnote, and citing no supporting authority. *See Batson v. Live Nation Ent., Inc.*, 746 F.3d 827, 833 (7th Cir. 2014) ("perfunctory and underdeveloped" arguments are forfeited). Empire argues that Georgia law controls Fireclay's tort claim because any alleged injury to Fireclay would have occurred there. Empire also contends that New Jersey law applies to the breach of contract claim based on its own status as a New Jersey-based entity. In the absence of a viable argument to the contrary, the Court will follow the course argued by Empire.

**A.      Claim for tortious interference with prospective business advantage**

In count 1 of its counterclaim, Fireclay alleges that Empire tortiously interfered with Fireclay's prospective business advantage. Specifically, Fireclay alleges that Empire contacted Fireclay's existing and prospective customers and (1) falsely represented to them that the injunction Empire had obtained against Winslyn prevented the customers from purchasing certain sinks from Fireclay, including sinks that were not covered by the injunction; (2) threatened litigation against them; and (3) made other false representations regarding Empire's right to certain sinks manufactured by Fireclay. Fireclay asserts that it had a reasonable expectation of selling sinks to these customers—of which Empire was aware—and that instead the entities that Empire

5

contacted purchased fewer sinks from Fireclay or none at all.

To prevail on a claim for tortious interference with a prospective economic advantage, a plaintiff must prove: (1) its expectation of entering into a valid business relationship; (2) defendant's knowledge of the plaintiff's expectancy; (3) defendant's purposeful interference with and defeat of the expectancy; and (4) damages to the plaintiff resulting from the interference. *Dowd & Dowd, Ltd. v. Gleason*, 181 Ill. 2d 460, 484, 693 N.E.2d 358, 370 (1998) (internal quotation marks and citations omitted); *Cook Pecan Co., Inc. v. McDaniel*, 344 Ga. App. 370, 374, 810 S.E.2d 186, 190 (2018) (describing similar elements); *Printing Mart-Morristown v. Sharp Elecs. Corp.*, 116 N.J. 739, 751-52, 563 A.2d 31, 37 (1989).

Empire has moved to dismiss Fireclay's claim on three grounds: (1) the claim is insufficiently pleaded because it rests "on information and belief"; (2) Empire's conduct—threatening litigation to safeguard its own legal interests—is protected by the "competitor's privilege"; and (3) Fireclay's claim is implausible because it was the injunction itself that "altered the customer's conduct," not Empire's "embellishment of that order" in its communication with Fireclay customers. Pl.'s Mem. (dkt. no. 365) at 1-2, 12. In response, Fireclay argues that it was Empire's specific misrepresentations to existing and prospective Fireclay customers, not the injunction against Winslyn, that deterred customers from doing business with Fireclay. Fireclay also argues that it can base its claim on allegations made "on information and belief" about misrepresentations Empire made to Fireclay's customers. Fireclay also argues that it "has a basis for its information and belief." Def.'s Resp. at 1. Finally, Fireclay argues that the competition privilege does not defeat its claim for several reasons: (1) Empire and Fireclay are not

6

competitors; (2) Empire's "improper" actions fall outside the scope of conduct protected by the privilege; and (3) even Empire's means were not improper, its acts were deceitful in a way that vitiates the privilege. *Id.* at 2.

The Court overrules Empire's contentions. First, Fireclay is entitled at this stage to base its allegations on information and belief. In *Green v. Beth*, 663 F. App'x 471 (7th Cir. 2016), the Seventh Circuit indicated that pleading upon "information and belief" is appropriate when the facts are "particularly in possession and control of defendant" or where "the belief is based on factual information that makes the inference of culpability plausible." *Id.* at 473 (citing *Arista Records, LLC v. Doe 3*, 604 F.3d 110, 120 (2d Cir. 2010)). Both of these propositions are true here. First, Fireclay's allegations involve representations made by the defendant (in this case Empire) to third parties, so Fireclay cannot reasonably be expected to have all the necessary information at this point. And second, Fireclay's complaint sufficiently alleges that its beliefs are "based on factual information that makes the inference of culpability plausible." *Id.* at 473.

Specifically, Fireclay alleges that Empire—through its counsel or Goren—called certain Fireclay customers, including IPT's principal, Troy Welker,[2] and falsely claimed that the injunction "preclude[ed] the purchase of certain sinks from Fireclay" and "indicated that IPT would be in violation of that order if IPT purchased those sinks from

---

[2] Empire asserts that Fireclay's reliance on Welker's declaration is improper because the Court may only look to the counterclaim to determine the sufficiency of Fireclay's allegations. Pl.'s Reply, dkt. no. 401, at 5. That is incorrect. In opposing a motion to dismiss, Fireclay "may describe the evidence it expects to offer to support factual allegations." *See Bell v. Publix Super Mkts., Inc.*, 982 F.3d 468, 480 n.2 (7th Cir. 2020). "[N]othing prevents a plaintiff from including such allegations in the complaint or from tendering affidavits or other documents to show that those expectations about evidence are realistic." *See id.*

7

Fireclay." Def.'s Countercl. ¶ 75; *see* Def.'s Ex. A, Troy Welker Decl. ¶¶ 4-12. Fireclay also asserts that Empire—in its communications with some, if not all of the Fireclay customers mentioned in the counterclaim—claimed "an additional entitlement to models sold by Fireclay with a different design from the Olde London and Sutton Place sinks." *Id.* ¶ 80. These allegations are sufficient to support Fireclay's information-and-belief assertion that Empire, with knowledge of Fireclay's expectation of selling sinks to these customers, purposely interfered with this expectation by making false representations to discourage them from doing business with Fireclay. Def.'s Countercl. ¶¶ 73-89.

Furthermore, Fireclay asserts facts sufficient to plausibly allege that it suffered damages—lost profits, lost income, and loss of business opportunities—as a result of Empire's interference. *Id.* Accepting as true the well-pleaded facts regarding Empire's outreach to Fireclay's customers—as well as the alleged impact of Empire's conduct on Fireclay's business—and drawing all permissible inferences in favor of Fireclay, *Agnew v. NCAA*, 683 F.3d 328 (7th Cir. 2012), Fireclay's pleadings make the inference of Empire's culpability plausible. *Id.* at 334; *Green*, 663 F. App'x at 473. The Court therefore overrules Empire's argument that Fireclay improperly premised its claim on allegations based on information and belief.

Second, Empire's invocation of two privileges, the first of which is the "competitor's privilege," which protects a defendant who "act[s] to advance its interests at the expense of its competitor," is unavailing at this stage of the case. *A-Abart Elec. Supply, Inc. v. Emerson Elec. Co.*, 956 F.2d 1399, 1405 (7th Cir. 1992). The competitor's privilege is an affirmative defense that allows competitors "to interfere with one another's prospective business relationships provided their intent is, at least in part,

to further their business." *Integra Healthcare, S.C. v. APP of Illinois HM, PLLC*, No. 18 C 3589, 2019 WL 3766122, at *7 (N.D. Ill. Aug. 9, 2019) (quoting *Imperial Apparel, Ltd. v. Cosmo's Designer Direct, Inc.*, 227 Ill. 2d. 381, 392, 882 N.E.2d 1011, 1019 (2008)). Its resolution at the motion to dismiss stage would be premature for two reasons. First, as a counterclaimant, Fireclay is "generally not required to plead around an affirmative defense to survive a motion to dismiss." *See ATC Healthcare Servs., Inc. v. RCM Techs., Inc.*, 282 F. Supp. 3d 1043, 1053 (N.D. Ill. 2017) (rejecting the argument that the plaintiff "has not overcome the competitor's privilege" because the plaintiff "is generally not required to plead around an affirmative defense to survive a motion to dismiss"); *see also Foboha GmbH v. Gram Tech., Inc.*, No. 8 C 969, 2008 WL 4619795, at *5 (N.D. Ill. Oct. 15, 2008) (rejecting "competitor's privilege" at motion to dismiss stage because "[d]efendants have not demonstrated that they are entitled to the competitor's privilege at this stage of the case"). Empire's affirmative defense is not a proper basis for dismissal under Rule 12(b)(6) unless the counterclaim itself establishes the defense, *see, e.g.*, *Parungao v. Community Health Systems, Inc.*, 858 F.3d 452, 457 (7th Cir. 2017), which Fireclay's counterclaim does not. For instance, there is a factual dispute regarding the defense's applicability: it is available only to a competitor, but the parties in this case legitimately dispute whether Empire is Fireclay's competitor, and the Court cannot appropriately resolve that dispute in ruling on a motion under Rule 12(b)(6). *See* Def.'s Resp. at 2, 12 (arguing that Fireclay is not a competitor because it supplied sinks to Empire).

In addition, Fireclay has pleaded sufficient facts indicating that Empire used "wrongful means to interfere," which, if taken as true, make the competitor's privilege

9

unavailable. Def.'s Countercl. ¶ 77 (alleging that Empire's CEO threatened criminal sanctions against IPT if it entered a transaction with Fireclay); *Integra Healthcare*, 2019 WL 3766122, at *7 ("The privilege does not . . . encompass the use of improper competitive strategies that employ fraud, deceit, intimidation, or deliberate disparagement") (internal quotations and citations omitted); *XPO Logistics, Inc., et al. v. Gallatin, et al.*, No. 13 C 1163, 2013 WL 3835358, at *6 (N.D. Ill. July 24, 2013) (explaining that a company may compete based on the competitor's privilege, but the privilege "is not available to a party that has behaved unfairly or used wrongful means").

Although Georgia law indicates that the "undertaking of a legally privileged act—such as filing a lawsuit to vindicate one's rights—cannot support a tortious interference claim," *Bell v. Sasser*, 238 Ga. App. 843, 852, 520 S.E.2d 287, 296 (1999), Fireclay's claim is not based on the filing of lawsuits and is not based solely upon threats to file suit. Rather, Fireclay contends Empire made false representations about how the purchase of sinks from Fireclay would violate the preliminary injunction order. Thus *Sasser* does not control here. *See Sasser*, 238 Ga. App. at 852, 520 S.E.2d at 296; Def.'s Countercl. ¶¶ 67-89.

Empire cites *Village of Lake Barrington v. Hogan*, 272 Ill. App. 3d 225, 233-34, 649 N.E.2d 1366, 1374 (1995), to invoke a second privilege—one that specifically defeats a claim for intentional interference with contract. But Fireclay asserts a claim for tortious interference with prospective advantage, a distinct tort from intentional interference with contract, the tort to which this second privilege applies. *See A-Abart Elec. Supply, Inc.*, 956 F.2d at 1404 (describing distinctions between the two types of claims).

Finally, Empire's argument that Fireclay's tort claim is implausible misses the mark. Empire argues that it was the modified preliminary injunction order, not its own conduct, that deterred customers from doing business with Fireclay, but this argument is misplaced on a motion to dismiss for failure to state a claim. At this stage, the Court must "construe all well-pleaded facts and draw all inferences in the light most favorable to the nonmoving party." *Vesely v. Armslist LLC*, 762 F.3d 661, 664 (7th Cir. 2014). The Court thus cannot appropriately consider Empire's alternative explanation for Fireclay's reduced sales.

For these reasons, Empire is not entitled to dismissal of Fireclay's claim of tortious interference with prospective business advantage.

**B.    Breach of contract**

In count 2 of its counterclaim, Fireclay alleges—in the alternative to its denial that had an enforceable contract with Empire—that Empire breached the terms of its claimed contract based on seven examples of conduct, including "failing to order the sinks in the quantities required." Def.'s Countercl. ¶ 98; Def.'s Resp. at 14-15. Empire argues that because there are no allegations that the parties had an agreement that included the terms Fireclay relies upon, Fireclay may not sustain a claim based on the breach of these supposed terms.

To state a claim for breach of contract, a party must allege: (1) a valid and enforceable contract exists; (2) its own substantial performance; (3) breach by the opposing party; and (4) resulting damages. *Murphy v. Implicito*, 392 N.J. Super. 245, 265, 920 A.2d 678, 689 (2007). Fireclay appears to argue that if there is a contract between the parties (which it denies), then it includes certain terms imposing obligations

11

on Empire that Fireclay says are "necessary to make such a contract sufficiently definite as to be legally enforceable." Def.'s Countercl. ¶ 97. Fireclay does not, however, allege any facts that support its contention that the terms enumerated in paragraph 98 of its counterclaim—such as quantity requirements or an obligation of exclusivity on Empire's part—are implied in any Empire-Fireclay contract. Absent such allegations, Fireclay's claim for breach of contract cannot be sustained.

Fireclay cites an exhibit from its response in opposition to modifying the preliminary injunction, Def.'s Ex. E, Goren Dep. (dkt. no. 383) at 122:3-8, to bolster paragraph 98 of its counterclaim, specifically its contention that Empire agreed to order 12,000 sinks but never met this obligation. Def.'s Resp. at 3; Def.'s Countercl. ¶ 98. Assuming the Court can appropriately take this into account in the current context, Fireclay does not allege facts that would be sufficient to establish that it substantially performed its own obligations under the alleged contract, which is an essential element of a breach of contract claim.

Finally, Fireclay's argument that Empire breached an implied covenant of good faith and fair dealing is not persuasive. Although "every contract in New Jersey contains an implied covenant of good faith and fair dealing," the covenant is limited. *Sons of Thunder, Inc. v. Borden, Inc.*, 148 N.J. 396, 420, 690 A.2d 575, 587 (1997). It simply precludes a party to a contract from doing "anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract." *See id.* That is not the case here. Fireclay alleges that Empire breached the covenant of good faith and fair dealing "by failing to timely provide Fireclay information on the type and quantity of sinks required." Def.'s Countercl. ¶ 98. This bare allegation, devoid of

specific factual content, fails to establish that Empire's conduct had—or would have—the effect of destroying or injuring Fireclay's right to receive the fruits of the parties' contract. In short, Fireclay fails to plead facts demonstrating that Empire breached the implied covenant of good faith and fair dealing under New Jersey law.

For these reasons, the Court dismisses Fireclay's breach of contract claim.

## Conclusion

For the foregoing reasons, the Court dismisses count 2 of Fireclay's counterclaim but denies Empire's motion to dismiss [dkt. no. 365] as to count 1. Empire is directed to answer count 1 of the counterclaim within fourteen days of this order.

_____
MATTHEW F. KENNELLY
United States District Judge

Date: January 21, 2021